CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
April 10, 2025
LAURA A. AUSTIN, CLERK
BY: /s/ S. Wray
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SARA SHABANI et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) Case No. 7:24-cv-444 |
| MARCO RUBIO, in his official | ) |
| capacity as Secretary of State, et al., | ) By:    Michael F. Urbanski |
| | ) Senior United States District Judge |
| Defendants. | ) |
| | ) |
| | ) |

## MEMORANDUM OPINION

This matter is before the court on defendants' motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1), for improper venue under Rule 12(b)(3), and for failure to state a claim under Rule 12(b)(6). ECF No. 13. The remaining plaintiffs are two of six Iranian nationals who sued defendants Secretary of State Marco Rubio, Consul General of the U.S. Embassy in Yerevan Stephanie Zakhem, and ten Consular Officers responsible for issuing visas at the U.S. Embassy in Yerevan. ECF No. 1.[1] Plaintiffs seek a writ of mandamus and declaratory and injunctive relief to compel defendants to adjudicate their F non-immigrant visa applications, which have been refused and placed in administrative processing for 22 and 26 months respectively, without further

---

[1] When this case was filed, the Secretary of State was Anthony J. Blinken. However, Marco Rubio now holds that office. Federal Rule of Civil Procedure 25(d) provides that "when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending[,] . . . [t]he officer's successor is automatically substituted as a party [and] [l]ater proceedings should be in the substituted party's name . . . . The court may order substitution at any time, but the absence of such an order does not affect the substitution." Fed. R. Civ. P. 25(d).

1

delay so that they may begin studying at universities in the United States. ECF No. 1. As to subject matter jurisdiction, defendants argue that the court cannot consider the merits of these claims because no statute or regulation requires defendants to take any further discrete action once a visa application has been refused, leaving the court with no legal action to compel. ECF No. 14. The court agrees. Accordingly, defendants' motion to dismiss is **GRANTED** for lack of subject matter jurisdiction.

## STATUTORY AND REGULATORY BACKGROUND

F-1 visas allow their holders to temporarily study in the United States, and F-2 visas allow spouses and minor children to accompany F-1 visa holders. 8 U.S.C. § 1101(a)(15)(F). To obtain an F visa, the applicant must first gain acceptance to an approved program, signified with a Form I-20. 8 C.F.R. § 214.2(f)(1)(i). The applicant must then file a Nonimmigrant Visa Application—Form DS-160—through the State Department's website. 22 C.F.R. § 41.103(a). Finally, the applicant must attend an in-person interview at a U.S. Embassy or Consulate, 8 U.S.C. § 1202(h)(1), and after the interview, a consular officer "shall determine . . . the proper nonimmigrant classification, if any, of the alien" and the "alien's eligibility to receive a visa," 22 C.F.R. § 41.102(a). The visa applicant bears the burden of establishing eligibility. 8 U.S.C. § 1361.

The Immigration and Nationality Act ("INA") requires that nonimmigrant visa applicants "shall furnish to the consular officer, with his application, a certified copy of such documents pertaining to him as may be by regulations required." 8 U.S.C. § 1202(d). In return, the INA states that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by

2

a consular officer." Id. The statute does not provide a clear definition of what it means for a consular officer to have "adjudicated" a visa application.

By regulation, however, a consular officer must, when a visa application has been "properly completed and executed, . . . issue the visa, refuse the visa, or, pursuant to an outstanding order under INA [§] 243(d), discontinue granting the visa." 22 C.F.R. § 41.121(a). The same regulation, 22 C.F.R. § 41.121(a), provides that "nonimmigrant visa refusals must be based on legal grounds such as . . . INA [§] 221(g)." Id. INA § 221(g), codified at 8 U.S.C. § 1201(g), is the provision cited in the refusals issued to the plaintiffs in this case. It states:

> No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, . . . , that such alien is ineligible to receive a visa or such other documentation under [§] 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under [§] 1182 of this title, or any other provision of law.

8 U.S.C. § 1201(g).

The Foreign Affairs Manual provides further guidance as to the nature of § 221(g) refusals. According to the Manual, "A refusal under INA [§] 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome." 9 FAM 302.1-8(B)(c).[2] A § 221(g) refusal can be "overcome" when the applicant "has presented additional evidence" or "when

---

[2] The Foreign Affairs Manual is not binding and "lack[s] the force of law." Scales v. Immigration & Naturalization Servs., 232 F.3d 1159, 1166 (9th Cir. 2000) (citations omitted). However, the court may rely on the Manual as one persuasive tool in ascertaining the function of § 221(g) refusals. Loper Bright Enters. v. Raimundo, 603 U.S. 369, 412-13 (2024) (permitting courts to consider the judgments of the executive branch while "exercis[ing] their independent judgment" in interpreting statutes governing administrative agencies).

3

the case required additional administrative processing, which has been completed." 9 FAM 504.11-4(A)(a).

As for the timing of visa adjudications, the relevant statutes and regulations do not state a precise or mandatory deadline. 22 C.F.R. § 41.106 requires that "[c]onsular officers . . . ensure that the Form DS-160 . . . is properly and promptly processed in accordance with the applicable regulations and instructions." 22 C.F.R. § 41.106. There is also a general requirement under the Administrative Procedure Act ("APA") that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555.

## FACTUAL BACKGROUND

When the complaint was filed, plaintiffs were six Iranian nationals seeking F-1 or F-2 nonimmigrant visas. Compl., ECF No. 1. Plaintiffs agree with defendants that four of the six plaintiffs' claims are now moot because the applications of Sara Shabani, Mohamadhosein Nourian, Hossein Akhtar, and Mehran Khoshnood "have been processed to conclusion or are in the final stage of processing after being notified that their administrative processing is complete." Opp'n, ECF No. 20 at 1. Thus, the only remaining claims are those of Bahareh Jafari and Nika Sahebghalam, whose visa applications have been pending for 26 and 22 months respectively. Id.

Jafari has been accepted into a PhD program in electrical and computer engineering at the University of Massachusetts, Amherst. Compl., ECF No. 1, ¶ 67. She submitted her visa application materials on January 7, 2023. Id. ¶ 68. On January 10, Jafari was interviewed by a consular officer at the U.S. Embassy in Yerevan, Armenia. Id. ¶ 69. The officer told Jafari that

4

"she should get her visa in a matter of few months." Id. Jafari was then given a form providing a § 221(g) refusal notice, which informed Jafari:

> Your case has been refused under [§] 221(g) of the United States Immigration and Nationality Act (INA), pending the receipt and review of the information and documents below. Once this information is received, we will continue to process your application. Please be advised that for U.S. visa purposes, including ESTA, this decision constitutes a denial of a visa.
>
> Your case requires administrative processing, which can take several months. You will receive a questionnaire by email in the next several days which must be filled out and returned . . . . Given the high number of cases in administrative processing, we cannot expedite your processing.

ECF No. 1-9 (Ex. I). The embassy requested that Jafari complete a questionnaire, and she did so on January 15. Compl., ECF No. 1, ¶ 70. Her application remains in administrative processing 26 months later, Opp'n, ECF No. 20 at 1, leaving her distressed and at risk of losing the opportunity to pursue her PhD in the United States, Compl., ECF No. 1, ¶¶ 76-77.

Sahebghalam's story is largely similar to Jafari's story. Sahebghalam has been accepted to the PhD program in electrical engineering at Boston University. Id. ¶ 54. She submitted her F-1 visa application materials on April 21, 2023, and she had her interview on May 16, which resulted in a § 221(g) refusal notice identical to the notice quoted above. Id. ¶¶ 55-56; see also ECF No. 1-7 (Ex. G). Like Jafari, Sahebghalam responded to a questionnaire at the embassy's request on May 19. Compl., ECF No. 1, ¶ 57. Her application remains in administrative processing 22 months later. Opp'n, ECF No. 20 at 1.

Neither Jafari nor Sahebghalam has any connection to the Western District of Virginia. Instead, plaintiffs originally based venue on the residency of Shabani, who resides in this district because she is a PhD student at Virginia Tech on an F-1 visa. Compl., ECF No. 1, ¶

5

18. Shabani's claim was based on her husband's pursuit of an F-2 visa. Id. ¶ 19. However, Shabani's husband was issued an F-2 visa on September 4, 2024, so the parties agree Shabani's and her husband's claims are moot. Mem. Supp. Mot. Dismiss, ECF No. 14 at 8; Opp'n, ECF No. 20 at 1.

Defendant Marco Rubio is the Secretary of State, which means he "has supervisory authority over the National Vetting Center and its employees who conduct administrative processing for non-immigrant visa cases." Compl., ECF No. 1, ¶ 11. Defendant Stephanie Zakhem is the Consul General of the U.S. Embassy in Yerevan, and she "is responsible for oversight of all consular activities of the Embassy." Id. ¶ 12. Defendants John Does #1-10 are the other consular officers "responsible for non-immigrant visas at the U.S. Embassy in Yerevan." Id. ¶ 13. All defendants are being sued in their official capacities. Id. ¶¶ 11-13.[3]

Plaintiffs initiated this action by filing a petition for writ of mandamus and a complaint for declaratory and injunctive relief on July 12, 2024. Id. Plaintiffs contend that defendants have "unreasonably failed to adjudicate [their] visa applications within a reasonable amount of time." Id. ¶ 4. Accordingly, plaintiffs seek a writ of mandamus to compel defendants to "complete all steps necessary to adjudicate Plaintiffs' visa applications within 14 days of the order." Id. at Relief Requested; see also 28 U.S.C. § 1362 (providing district courts with mandamus jurisdiction to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff"). Plaintiffs also rely on APA § 706(1) in

---

[3] Defendants do not dispute that they are indeed the appropriate parties with the ability to redress plaintiffs' grievances, and indeed, courts that have considered the matter in similar cases have concluded that although the Secretary of State has no legal authority to control a consular officer's decision to grant or deny an individual visa application, he has the power to direct consular officers to decide pending applications in a timely manner, in accordance with relevant regulations and the APA. Khazaei v. Blinken, No. 23-1419, 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023).

6

seeking an injunction of further delay and a declaratory judgment stating that defendants' "continued failure to adjudicate Plaintiffs' visa applications, and their pattern and practice of unreasonable delay, constitutes agency action unlawfully withheld or unreasonably delayed." Id. at Relief Requested; see 5 U.S.C. § 706(1). Additionally, the complaint alleges that defendants have violated their general duty to act "within a reasonable time" under APA § 555(b), 5 U.S.C. § 555(b), and that defendants' actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and were taken "without observance of procedure required by law" in violation of APA § 706(2), 5 U.S.C. §§ 706(2)(A)-(D).

Defendants moved to dismiss for lack of subject matter jurisdiction, improper venue, and failure to state a claim on September 17, 2024. ECF No. 13. Defendants argue that subject matter jurisdiction is lacking because plaintiffs cannot point to any discrete, required agency action that this court could properly compel, that venue is improper because none of the parties or events in this case is sufficiently tied to the Western District of Virginia, and that plaintiffs have not stated a claim because consular non-reviewability applies and the alleged delay in processing plaintiffs' visa applications is not unreasonable. Mem. Supp. Mot. Dismiss, ECF No. 14. However, because the lack of subject matter jurisdiction resolves this case, this opinion will not address venue or the substance of plaintiffs' claims.

## STANDARD OF REVIEW

"Generally, a court must resolve jurisdictional issues before considering the merits of a claim, because '[w]ithout jurisdiction the court cannot proceed at all in any cause.'" Whitaker v. Monroe Staffing Servs., LLC, 42 F.4th 200, 206 (4th Cir. 2022) (quoting Steel Co. v. Citizens

7

for a Better Env't, 523 U.S. 83, 94-95 (1998)); see also Zadeh v. Blinken, No. 23-cv-3721, 2024 WL 2708324, at *4 (N.D. Ill. May 20, 2024) ("Subject matter jurisdiction always comes first."). Although courts are permitted to resolve certain threshold issues unrelated to the merits, like forum non conveniens, prior to assuring themselves of jurisdiction where doing so serves judicial economy, the Fourth Circuit has concluded that district courts should assure themselves of jurisdiction before making decisions related to transfer of venue that do touch upon the merits. Whitaker, 42 F.4th at 208 (determining that the district court should have decided jurisdiction before considering whether to transfer venue based on a forum selection clause). Moreover, the Supreme Court has noted, "If . . . a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground," rather than address threshold issues unnecessarily. Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 436 (2007) (noting that judicial economy will favor this course in the "mine run of cases," where jurisdiction can be assessed without extensive factual development). Accordingly, this opinion will evaluate defendants' motion under Rule 12(b)(1), rather than first considering the possibility of dismissing or transferring venue under Rule 12(b)(3).

The party asserting federal jurisdiction bears the burden to prove that subject matter jurisdiction exists. See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). "Subject-matter jurisdiction may be challenged as a facial or factual attack." Hannah v. United States, No. 7:20-cv-662, 2022 WL 135314, at *2 (W.D. Va. Jan. 13, 2022) (citing Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc., 892 F.3d 613, 621 n.7 (4th Cir. 2018)). In a facial challenge, a

8

defendant may contend "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." Wells v. Artrip, No. 1:16-cv-041, 2017 WL 1788385, at *2 (W.D. Va. May 3, 2017). In a factual challenge, a defendant may argue "that the jurisdictional allegations of the complaint [are] not true." Id.

## DISCUSSION

Judicial review of agency inaction is limited under both the APA and the Mandamus Act. As the Supreme Court held in Norton v. Southern Utah Wilderness Alliance, APA § 706(1) claims asking a court to "compel agency action unlawfully withheld or unreasonably delayed" may "proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." 542 U.S. 55, 64 (2004). The Fourth Circuit has framed Norton's prohibition on judicial review of APA § 706(1) claims of agency action unlawfully withheld or unreasonably delayed absent discrete, required agency action as part of APA § 701(a)(2)'s preclusion of judicial review of "agency action . . . committed to agency discretion by law." Lovo v. Miller, 107 F.4th 199, 211 (4th Cir. 2024). The Fourth Circuit treats the absence of discrete, required agency action as jurisdictional, not merely as an issue of the plaintiff failing to state a meritorious APA § 706(1) claim. See id. at 216 (affirming dismissal for lack of subject matter jurisdiction where the plaintiffs' APA claim was not based on a discrete legal requirement); Gonzalez v. Cuccinelli, 985 F.3d 357, 365-66 (4th Cir. 2021) (characterizing Norton's holding as jurisdictional); NAACP v. Bureau of the Census, 945 F.3d

9

183, 191 (4th Cir. 2019) (finding that a plaintiff's failure to identify agency action eligible for judicial review under the APA is a "jurisdictional defect").[4]

The Mandamus Act similarly "only permits federal courts to exercise jurisdiction if an agency has a clear duty to act." Lovo, 107 F.4th at 216 (citing 28 U.S.C. § 1361). Indeed, the Supreme Court's conclusion in Norton that "the only agency action that can be compelled under the APA is action legally *required*" derives from the traditional mandamus remedy, which was historically "limited to enforcement of a specific unequivocal command, the ordering of a precise definite act . . . about which [an official] had no discretion whatever." 542 U.S. at 63 (citations omitted). Thus, mandamus relief is only available where the agency has a "clear duty to act," and as was the case under the APA, such a clear duty is a "threshold requirement[]" under the Mandamus Act that is "jurisdictional; unless [it is] met, a court must dismiss the case for lack of jurisdiction." Am. Hosp. Ass'n v. Burwell, 812 F.3d 183, 189 (D.C. Cir. 2016).

In assessing whether a clear duty or a discrete, required agency action exists, courts look for a "clear indication of binding commitment," Norton, 542 U.S. at 69, in "the text of the relevant statutes and regulations," Lovo, 107 F.4th at 211. "[T]he presence of 'unmistakably mandatory' language, such as the word 'will,' can provide sufficient evidence of

---

[4] Some courts have treated the question of whether further adjudication of a visa application beyond issuance of a § 221(g) refusal is a discrete, required agency action as a merits issue to be addressed under Rule 12(b)(6). See, e.g., Sheikhalizadehjahed v. Gaudiosi, No. 2:24-cv-1136, 2024 WL 4505648, at *2-8 (E.D. Cal. Oct. 16, 2024); Khazaei, 2023 WL 6065095, at *5; Rezaeirad v. Blinken, No. 23-1182, 2024 WL 3792537, at *4 (D.D.C. Aug. 12, 2024). However, under Fourth Circuit precedent, the issue is plainly jurisdictional and must be addressed under Rule 12(b)(1). See, e.g., Farahani v. Laitinen, No. 1:23-cv-922, 2025 WL 360833, at *4 (M.D.N.C. Jan. 31, 2025); Berenjian v. Blinken, No. 1:24-cv-663, 2024 WL 3732451, at *3 (E.D. Va. Aug. 8, 2024). Many courts in other circuits have also treated the issue as jurisdictional. See, e.g., Ahmed v. Blinken, No. 24-153, 2024 WL 4903771, at *4-5 (D.D.C. Nov. 27, 2024); Fakhimi v. Dep't of State, No. 23-1127, 2023 WL 6976073, at *6 (D.D.C. Oct. 23, 2023).

10

the unequivocal command required . . . to hold that an agency is compelled to act." Id. (citing Gonzalez, 985 F.3d at 366-71). However, "the impact of seemingly mandatory or permissive language depends heavily on the context in which it appears." Id. at 212.

Here, several statutory and regulatory provisions use mandatory language in obligating defendants to take action on visa applications. The INA requires that "all nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d) (emphasis added). This provision constitutes a requirement that consular officers review and adjudicate visa applications. Lovo, 107 F.4th at 211. However, the INA does not clarify what discrete action satisfies the requirement that an application be "reviewed and adjudicated." 8 U.S.C. § 1202(d).

Regulations fill in the picture. 22 C.F.R. § 41.121(a) requires that, when a visa application has been executed, "the consular officer must issue the visa, refuse the visa, or . . . discontinue granting the visa." 22 C.F.R. § 41.121(a) (emphasis added). This mandatory language establishes a nondiscretionary duty for consular officers to review and adjudicate visa applications by issuing, refusing, or discontinuing granting visas. Importantly for this case, this language explicitly makes refusal of a visa one way in which consular officers may discharge their mandatory duties. The text of 22 C.F.R. § 41.121(a) specifically provides that a § 221(g) refusal constitutes a qualifying refusal, stating that "nonimmigrant visa refusals must be based on legal grounds such as . . . INA [§] 221(g)." The Foreign Affairs Manual further clarifies, "A refusal under INA [§] 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome." 9 FAM 302.1-8(B)(c).

Thus, although there is discrete, required agency action that defendants in this case must take in that they must review and adjudicate visa applications by issuing visas, refusing visas, or discontinuing granting visas, defendants here have already taken the discrete action required of them by issuing § 221(g) refusals. After a refusal, such as a § 221(g) refusal, has been issued, there is no further discrete action consular officers must take to satisfy their obligations under the INA, 22 C.F.R. § 41.121(a), or any other pertinent statute or regulation.

Many courts have reached the same conclusion, including many in the Fourth Circuit. See, e.g., Farahani v. Laitinen, No. 1:23-cv-922, 2025 WL 360833, at *4 (M.D.N.C. Jan. 31, 2025) ("The consular officer in this case . . . discharged the discrete, non-discretionary duty to adjudicate the visa applications of Dr. Farahani's family by informing them that the applications had been refused and were being placed in administrative processing."); Turner v. Blinken, No. 24-318, 2024 WL 4957178, at *5 (D. Md. Dec. 3, 2024) (collecting cases in this circuit and deciding "[p]laintiffs cannot meet their burden to prove subject matter jurisdiction because they cannot show that Defendants have failed to fulfill a discrete, non-discretionary duty to act after their refusal . . . pursuant to § 221(g)"); see also Ramizi v. Blinken, No. 5:23-cv-730, 2024 WL 3875041, at *10 (E.D.N.C. Aug. 14, 2024) (concluding that the defendants had "discharged their nondiscretionary duty to adjudicate [the plaintiff's] visa application" by issuing a refusal pending administrative processing); Berenjian, 2024 WL 3732451, at *3 (E.D. Va. Aug. 8, 2024) (holding that "[t]his [§ 221(g)] refusal at the time of the applicant's interview discharges the government's obligations with respect to the application," thus depriving the district court of subject matter jurisdiction); Ameen v. U.S. Dep't of State, No. 1:23-cv-01391, 2024 WL 3416264, at *3 (E.D. Va. July 15, 2024) ("Ameen does not raise any mandatory

12

procedures which Defendants failed to follow" because "an initial refusal followed by further inquiry is consistent with visa statute and regulations."); Tesfaye v. Blinken, No. 22-411, 2022 WL 4534863, at *5 (D.D.C. Sept. 28, 2022) ("Plaintiffs themselves indicate that after their interview, their applications were 'refused' under INA § 221(g)—in other words that the consular officer took the precise action directed by the regulation."); Esghai v. U.S. Dep't of State, No. 24-cv-2993, 2024 WL 4753799, at *6 (S.D.N.Y. Nov. 12, 2024) ("Esghai's APA claim fails because the State Department has taken action here: It refused Zojaji's application, and there is no legal basis for Esghai's bid to compel further action on the already-refused application.").

The D.C. Circuit's reasoning in Karimova v. Abate is instructive. There, albeit in an unpublished opinion, the D.C. Circuit determined that where a visa application "was considered by the consular officer and officially refused," consular officers have no further duty "after making that decision, to hold onto the application in case circumstances later change in the applicant's favor, thereby saving the applicant the time and cost of filing a whole new visa application." No. 23-5178, 2024 WL 3517852, at *2-4 (D.C. Cir. July 24, 2024). The court explained that "keeping the door open in administrative processing" does not mean that a visa application has not been "officially refused." Id.

Courts that have reached the opposite conclusion have frequently based their decisions on the finding that § 221(g) refusals are not final. See, e.g., Ebrahimi v. Blinken, No. 23-c-3867, 2024 WL 2020038, at *5-8 (N.D. Ill. May 3, 2024) (finding that the adjudication of a visa application was not complete where the applicant remained in administrative processing); Khazaei, 2023 WL 6065095, at *5 (finding that "because the Department's evaluation of

13

Plaintiffs' visa applications is ongoing," the court could review applicants' unreasonable delay claims); Sheikhalizadehjahed, 2024 WL 4505648, at *7 ("The initial refusal of Plaintiff's father's visa application while placing it in 'administrative processing' does not dispense with [the] duty [to adjudicate visa applications] because there has been no final adjudication."); Hassan v. Dillard, No. 24-cv-1351, 2024 WL 4979476, at *5 (D. Minn. Dec. 4, 2024) ("[T]his Court is not persuaded . . . that a consular officer's purported 'refusal' of a visa application operates as a final agency decision that concludes the agency's legal obligation to adjudicate the application when the officer places the application in administrative processing."). This court agrees that § 221(g) refusals are not final in many cases. The plaintiffs' stories here attest to this reality. While some visa applicants may remain in administrative processing, others, like Shabani, Nourian, Akhtar, and Khoshnood, eventually receive word that administrative processing of their visa application has been completed. Opp'n, ECF No. 20 at 1. Indeed, the Foreign Affairs Manual confirms that a § 221(g) refusal can be "overcome" when the applicant "has presented additional evidence" or "when the case required additional administrative processing, which has been completed." 9 FAM 504.11-4(A)(a).

However, this court parts ways with those that have determined that it is inherently significant that § 221(g) refusals are not final because this court concludes that there is no mandatory duty under the INA or its implementing regulations requiring consular officers to reach a more definitive decision on a visa application that has already been refused. In Yaghoubnezhad v. Stufft, an opinion out of the District of Columbia, the court concluded that the fact that an application has been refused under § 221(g) to allow for administrative processing "is of little relevance since nothing in § 41.121 provides a 'specific, unequivocal

14

command' for State to issue a final, unreviewable decision." 734 F. Supp. 3d 87, 102 (D.D.C. 2024) (quoting Norton, 542 U.S. at 63). "Conspicuously absent from [22 C.F.R. § 41.121(a)] is any requirement that the refusal be 'final' or ineligible for discretionary re-adjudication or 'administrative processing.'" Id. at 101; see also Ramizi, 2024 WL 3875041, at *10 ("[T]he possibility of reconsideration of a refusal does not mean that the refusal was not a refusal."); Farahani, 2025 WL 360833, at *4 (same). The absence of any finality requirement in 22 C.F.R. § 41.121(a) is telling because while the INA contains the general directive that visa applications "shall be reviewed and adjudicated," 8 U.S.C. § 1202(d), it is 22 C.F.R. § 41.121(a) that contains the discrete requirement that visa applications "must" be issued or refused, 22 C.F.R. § 41.121(a). By refusing the visa applications, defendants here have already taken this discrete, required agency action, and plaintiffs have not pointed to any alternative statute or regulation that might provide a "clear indication of binding commitment" to take additional action resulting in a conclusive, unreviewable determination. Norton, 542 U.S. at 69.

The other statutory and regulatory grounds on which some courts have relied in identifying discrete, required agency action post-§ 221(g) refusal are inapposite. Courts outside the Fourth Circuit have occasionally cited APA § 555(b)'s general requirement that "within a reasonable time, each agency shall proceed to conclude a matter presented to it," 5 U.S.C. § 555(b), to find that consular officers are required to resolve administrative processing within a reasonable time. Fakhimi, 2023 WL 6976073, at *6 (citing Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1099 (D.C. Cir. 2003)) (concluding that a determination on a visa application is discrete agency action "required by both the APA and the Department's own regulation, and is to be done within a reasonable time");

15

Sheikhalizadehjahed, 2024 WL 4505648, at *7 ("[E]ven if the Court were to conclude that [INA] § 1202(b) does not impose a nondiscretionary duty to render a final adjudication in a visa application, § 555(b) of the APA independently creates a non-discretionary duty to do so."). However, Fourth Circuit precedent forecloses applying APA § 555(b) in this case.[5] "[T]he Fourth Circuit has determined that [the] broad language [in APA § 555(b)] is not sufficient to create the discrete, non-discretionary duty required to enable judicial review of agency inaction under APA § 706(1)." Turner, 2024 WL 4957178, at *5 (citing Gonzalez, 985 F.3d at 365-66); see also Farahani, 2025 WL 360833, at *4 (explaining that the Fourth Circuit's analyses in Gonzalez, 985 F.3d 357, and Lovo, 107 F.4th 199, necessitate looking to the INA and its implementing regulations rather than to the general provisions of the APA to identify discrete, required agency action in the sphere of immigration law). In Karimova, the D.C. Circuit similarly concluded that APA § 555(b) provides only a "non-specific directive to all agencies" to resolve matters within a reasonable time, not a specific, nondiscretionary duty to promptly adjudicate visa applications. 2024 WL 3517852, at *3.

Other courts have cited 22 C.F.R. § 41.106 in finding that "[g]ranting or refusing a final visa application is a mandatory agency action." Vulupala v. Barr, 438 F. Supp. 3d 93, 100 (D.D.C. 2020). However, like 22 C.F.R. § 41.121(a), 22 C.F.R. § 41.106 contains no finality

---

[5] Plaintiffs filed a notice of supplemental authority alerting the court to a recent district court decision out of the District of Nevada, Felix v. United States Department of State. ECF No. 33. In that case, the court concluded that "[t]he Secretary of State owes plaintiff a mandatory, non-discretionary duty that [her son's] application will be adjudicated by a consular officer within a reasonable time." No. 2:24-cv-812, 2025 WL 588315, at *3 (D. Nev. Feb. 24, 2025). However, the only authority the court cited was Durham v. Blinken, which relied on APA § 555(b) to identify a discrete requirement that visa applications be adjudicated "within a reasonable time." No. 24-02868, 2024 WL 3811146, at * 4 (C.D. Cal. Aug. 8, 2024). Because Fourth Circuit precedent precludes treating APA § 555(b) as a discrete requirement for agency action, this supplemental authority is unavailing.

16

requirement. All that regulation states is that "[c]onsular officers must ensure that the Form DS-160 or, alternatively, Form DS-156 is properly and promptly processed in accordance with the applicable regulations and instructions." 22 C.F.R. § 41.106. Once a visa application has been refused in accordance with § 221(g), it has been "processed in accordance with the applicable regulations and instructions," 22 C.F.R. § 41.106, namely, in accordance with 22 C.F.R. § 41.121(a). Accordingly, 22 C.F.R. § 41.106 is as unavailing as APA § 555(b) as a possible ground for an unreasonable delay claim where a visa application has been refused under § 221(g).[6]

Finally, plaintiffs here contend that § 221(g) refusals are not only not "final," but also are not determinations of "substantive eligibility." Opp'n, ECF No. 20 at 7-10. Plaintiffs point to INA § 212, codified at 8 U.S.C. § 1182, which describes substantive grounds for ineligibility. For example, the statute provides that if the applicant poses a risk to public health or safety, the applicant is ineligible. 8 U.S.C. § 1182(a). INA § 212 then requires that "if an alien's

---

[6] 22 C.F.R. § 42.81(e) is similarly an insufficient basis for a discrete regulatory requirement that plaintiffs' visa applications receive further action once refused. That provision was cited in Aramnahad v. Rubio, No. 24-cv-1817, 2025 WL 973483, at *8 (D.D.C. Mar. 31, 2025), which plaintiffs raised to the court as supplemental authority, though plaintiffs themselves have not relied on 22 C.F.R. § 42.81(e). ECF No. 34. 22 C.F.R. § 42.81(e) states, "If a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." 22 C.F.R. § 42.81(e). In Aramnahad, the court concluded that this provision, "[w]hen read in conjunction with [§] 555(b) of the APA" and 22 C.F.R. § 42.81(a), provides the government "a clear duty to adjudicate visa applications within a reasonable time." Aramnahad, 2025 WL 973483, at *8 (quotation omitted). However, for the reasons already explained, neither APA § 555(b) nor 22 C.F.R. § 42.81(a) can be relied upon to create a discrete requirement for further agency action in this case, and, standing alone, 22 C.F.R. § 42.81(e) is only a mandatory requirement for reconsideration when an applicant has adduced evidence "tending to overcome the ground of ineligibility on which the refusal was based." 22 C.F.R. § 42.81(e). Here, no allegations or evidence indicate whether this precondition has been satisfied. See Richmond, Fredericksburg & Potomac R.R. Co., 945 F.2d at 768 (explaining that the party asserting federal jurisdiction, here, plaintiffs, bears the burden to prove subject matter jurisdiction exists). Although plaintiffs allege that they submitted requested questionnaires, the contents of those questionnaires are not before the court, and there is no way to know whether the information contained therein overcame any reason for ineligibility that consular officers had previously considered. Compl., ECF No. 1, ¶¶ 57, 70. Furthermore, even if a requirement for reconsideration applied, 22 C.F.R. § 42.81(e) does not state the timeline on which reconsideration is to occur.

17

application for a visa . . . is denied by an immigration or consular officer because the officer determines the alien to be inadmissible under [INA § 212] . . . , the officer shall provide the alien with a timely written notice" that "states the determination" and "lists the specific provision or provisions of law under which the alien is inadmissible." 8 U.S.C. § 1182(b). Plaintiffs also note that, under 22 C.F.R. §41.121(b)(1), "[w]hen a consular officer knows or has reason to believe a visa applicant is ineligible and refuses the issuance of a visa, he or she must inform the alien of the ground(s) of ineligibility . . . ." 22 C.F.R. §41.121(b)(1).[7] However, although these provisions enumerate substantive grounds for visa application refusals and require that when ineligibility has been identified, the applicant should be informed of the reason for ineligibility, neither of these provisions requires that consular officers provide substantive INA § 212 justifications for all visa application refusals. To the contrary, the very existence of INA § 221(g) attests to Congress's design that administrative refusals and refusals under "other provision[s] of law" are permissible in addition to those "under [§ 212] of this title." 8 U.S.C. § 1201(g) ("No visa or other documentation shall be issued to an alien if . . ." they are "ineligible . . . under [INA § 212], or any other provision of law" or if "the application fails to comply with the provisions of this chapter, or the regulations issued thereunder . . . ."). Moreover, 22 C.F.R. § 41.121(a) expressly identifies INA § 221(g) as adequate "legal grounds" on which to base a visa refusal. Thus, § 221(g) refusals discharge the duty to comply with the

---

[7] Plaintiffs here were told that their refusals were based on "Section 221(g)" because their cases "require[d] administrative processing." ECF No. 1-7 (Ex. G); ECF No. 1-9 (Ex. I). It stands to reason that plaintiffs were not informed of substantive bases of ineligibility because the reasons for their refusals were related to the need for administrative processing under § 221(g), which is a permissible "legal ground[]" for refusal under 22 C.F.R. § 41.121(a).

18

discrete requirement that consular officers issue or refuse visa applications, and no statute or regulation requires further action that is either final or substantive in nature.

Plaintiffs' position that consular officers ought to reach final, substantive visa eligibility determinations has intuitive appeal. However, the test for identifying discrete, required agency action under Norton and Lovo looks to "the text of the relevant statutes and regulations," not to policy. Lovo, 107 F.4th at 211. Where neither Congress nor the agency itself has set forth standards requiring the agency to act, it is not the province of the federal courts to compel agency action. Lovo, 107 F.4th at 216 ("[B]ecause neither Congress nor USCIS itself has ever bound USCIS to adjudicate these applications, the federal courts lack jurisdiction to consider Plaintiffs' APA claim."). As the Fourth Circuit put it in Gonzalez, "[W]here an agency is not required to do something, we cannot compel the agency to act—let alone to act faster." 985 F.3d at 366. Thus, the court lacks jurisdiction over plaintiffs' claims because defendants have already satisfied their mandatory duties under the INA and implementing regulations by issuing § 221(g) refusals, and there is no further discrete, required agency action that the court could compel defendants to take.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss for lack of subject matter jurisdiction is **GRANTED**. This case is closed and stricken from the docket of the court.

An appropriate order will be entered.

Entered: April 10, 2025

*/s/ Michael F. Urbanski*

Michael F. Urbanski
Senior United States District Judge